| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- x<br>UNIVERSAL TRADING & INVESTMENT CO.,  :<br>INC.; and FOUNDATION HONESTY          :<br>INTERNATIONAL, INC.                              :<br>                                                                      :<br>                    Plaintiffs,                              :<br>                                                                      :<br>           -against-                                           :<br>                                                                      :<br>CREDIT SUISSE (GUERNSEY) LTD.; CREDIT :<br>SUISSE AG; CREDIT SUISSE TRUST, LTD;   :<br>PHILIP GLANFIELD; PAMELA LE                 :<br>CHEMINANT; JULIA CHURCH; and DOES 1 :<br>through 10                                                 :<br>                                                                      :<br>                    Defendants                            :<br>------------------------------------------------------------- x | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  December 12, 2012<br><br><br>12 Civ. 0198 (PAC)<br><br>**OPINION & ORDER** |

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Credit Suisse (Guernsey) Ltd. ("CS-G"), Credit Suisse AG ("CS-AG"), Credit Suisse Trust Ltd. ("CS-Trust"), Philip Glanfield ("Glanfield"), Pamela Le Cheminant ("Le Cheminant"), and Julia Church ("Church," and with Glanfield and Le Cheminant, the "Individual Defendants") move to dismiss Universal Trading and Investment Co., Inc's ("Universal Trading") and Foundation Honesty International, Inc.'s complaint seeking to recover money awarded to Universal Trading in an earlier case in which Universal Trading obtained a default judgment against United Energy Systems of Ukraine, PFG ("United Energy-Ukraine") in the amount of $18,344,480.  Compl. at ¶¶ 1-2; see also United Energy Sys. of Ukraine, PFG v. Universal Trading & Inv. Co., Inc., No. 97 Civ. 12180 (D. Mass.).  Plaintiffs' allegations paint a tangled web of trusts and other entities, many of which are not parties to this action.  Non-party BL Trust was operated by CS-Trust and owned non-party Bassington, Ltd. ("Bassington").  Id. at ¶¶ 13, 55.  Bassington owned 90% of non-party United Energy International, Ltd.  which, in

1

turn, owned 85% of non-party United Energy-Ukraine. Id. at ¶¶ 37-38, 50. Bassington was controlled by the Individual Defendants, in their capacity as CS-Trust employees. Id. at ¶ 49. Defendants are claimed to be complicit in a complicated international money laundering and bribery scheme by United Energy-Ukraine and two of its former executives, Olexander and Yulia Tymoshenko,[1] who improperly transferred "at least $460,000" to an account in New York via CS-AG and CS-G. Id. at ¶¶ 11, 13, 46, 57. Based on these allegations, Plaintiffs seek to collect from Defendants the $18 million they are owed by United Energy-Ukraine, plus damages claimed to be caused by Defendants' purposeful participation in a fraudulent scheme to frustrate Universal Trading's efforts to collect on the judgment. For the reasons discussed below, Defendants' motion to dismiss the complaint is granted.

## DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss the complaint on a variety of theories, including that (1) the Court lacks personal jurisdiction over CS-G, CS-Trust, and the Individual Defendants; (2) the Southern District of New York constitutes a *forum non conveniens*; (3) Plaintiffs failed to state a claim upon which relief can be granted with respect to counts two through nine; and (4) count one was inadequately pled. The Court only addresses those issues necessary to decide this motion, and therefore does not opine on all of Defendants' theories.

## DISCUSSION

### I.     Judicial Notice

In support of its opposition to Defendants' motion to dismiss, Plaintiffs have requested that the Court take judicial notice of voluminous filings. Defendants object that judicial notice

---

[1] Universal Trading has brought a separate action on similar grounds against Yulia Tymoshenko, which this Court dismissed for lack of personal jurisdiction. See Universal Trading & Inv. Co., Inc. v. Tymoshenko, No. 11 Civ. 7877 (S.D.N.Y.), Dkt. No. 28.

would be improper with regard to statements contained in filings in other recent and ongoing litigation.  In deciding a motion to dismiss, the Court may consider "matters of which judicial notice may be taken." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).  Courts must be cautious in doing so, however, "because the effect . . . is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).  Therefore, while "'[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings,'" it may not take judicial notice "'for the truth of the matters asserted in the other litigation.'" Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing, 146 F.3d at 70).  Since Plaintiffs seek recognition of the assertions made in other litigations, rather than merely acknowledging the existence of the other litigations and filings made therein, the Court rejects Plaintiffs' Request for Judicial Notice as to assertions made in Exhibits A, B, C, D, E, F, I and J of the Plaintiffs' filing.

## II.     Personal Jurisdiction

Defendants move to dismiss the complaint for lack of personal jurisdiction over CS-G, CS-Trust and the Individual Defendants, but do not contest the Court's personal jurisdiction over CS-AG.[2]  Def.'s Mem. of Law at 8 n.9.  Since Plaintiffs assert diversity jurisdiction, Compl. at ¶ 17, personal jurisdiction is governed by New York law.  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d. Cir. 2006). Under the New York law, jurisdiction over out-of-state defendants

---

[2] The Court cannot accept Plaintiffs' argument that jurisdiction over CS-AG confers jurisdiction over its subsidiaries and employees.  "[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation" so long as "the activities of the parent [do not] show a disregard for the separate corporate existence of the subsidiary." Ritchie Capital Mgmt., LLC v. Coventry First LLC, No. 07 Civ. 3494, 2007 WL 2044656, at *10 (S.D.N.Y. July 17, 2007) (quoting Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984)).  Plaintiffs make no such showing.

3

may be based on general jurisdiction under CPLR § 301 ("Section 301") or long-arm jurisdiction under CPLR § 302 ("Section 302").  "[P]laintiff[s] carr[y] the burden of demonstrating that jurisdiction exists." Penachio v. Benedict, 461 Fed. Appx. 4, 5 (2d Cir. 2012) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).  They have failed to do so and Defendants' motion to dismiss with respect to CS-G, CS-Trust, and the Individual Defendants is therefore granted.

> *A.    Section 301 – General Jurisdiction*

Section 301 grants jurisdiction over a foreign party "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." Laufer v. Ostrow, 434 N.E.2d 692, 649 (N.Y. 1982) (quoting McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981)).  This requires a finding that they are "'present' in the state 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Landoil Resources Corp. v. Alexander & Alexander Servs., 77 N.Y.S.2d 28, 34 (1990).  With regards to corporations, courts consider five factors in making this determination: (1) whether the company has an office in New York; (2) whether it solicits business in New York; (3) whether it has any bank accounts or other property in New York; (4) whether it has a phone listing in New York; and (5) whether it has individuals permanently located in New York to promote its interests. See, e.g., Hoffritz for Cutlery Inc. v. Amajac, Ltd., 763 F.3d 55, 58 (2d Cir. 1985); Seldon v. Direct Response Techs., Inc., No. 03 Civ. 5381 (SAS), 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004).

Plaintiffs do not allege that CS-G had offices, solicited business, had a phone listing, or had employees located in New York.  Rather, they focus on the existence of a bank account at an unspecified Credit Suisse entity in New York that was controlled by CS-G.  Standing alone, that

is not sufficient to confer general jurisdiction over a foreign defendant. J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001).

With regard to CS-Trust, Plaintiffs note that Defendants have admitted that it has "provided trust administration services to 'a small number of U.S. citizens,'" presumably in order to show that it has solicited business within the United States. See Def.'s Mem. of Law at 9 (quoting Poidevin Decl. at n.2, May 14, 2012, Dkt. No. 36). But they bear the burden of showing that CS-Trust solicited business in New York in particular, not just within the United States. Furthermore, they omit the rest of the footnote, which specifies that "most, if not all of these clients did not reside in the United States at the time CS-Trust provided its services." Poivedin Decl. at n.2. As a result, this is clearly insufficient to show a connection between CS-Trust and New York.

Plaintiffs have not alleged that the Individual Defendants engaged in any "systematic course of 'doing business'" in New York, Lauder, 434 N.E.2d at 649. As a result, neither CS-G, CS-Trust, nor the Individual Defendants are subject to personal jurisdiction under Section 301.

    *B.     Section 302 – Specific Jurisdiction*

Plaintiffs assert that this Court "has jurisdiction over all Defendants, because they have conducted business in the United States, particularly in New York." Compl. at ¶ 18. Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within [New York], provided that the cause of action arises out of the transaction of business." Deer Consumer Prods., Inc. v. Little, 938 N.Y.S.2d 767, 776 (N.Y. Sup. Ct. 2012) (citing Lebel v. Tello, 707 N.Y.S.2d 426, 426 (1st Dep't 2000)). To satisfy Section 302(a)(1), "there must be 'an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon.'" Tamam v. Fransabank Sal, 677 F.

5

Supp. 2d 720, 726 (S.D.N.Y. 2010) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004)).  In other words, "jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state."  Id.

Plaintiffs fail to show that CS-G, CS-Trust and the Individual Defendants, through their use of a bank account in New York, have conducted business that is sufficiently related to New York or that the business was more than "'merely coincidental.'"  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 249 (2d Cir. 2007) (quoting Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir 2006)).

While New York courts have long held that "the 'mere maintenance' of a correspondent bank account in New York does not suffice to establish personal jurisdiction there" pursuant to Section 302(a)(1), the interpretation and application of the term "mere maintenance" remained ambiguous.  Licci v. Lebanese Canadian Bank, SAL, No. 183, 2012 WL 5844997 (Nov. 20, 2012) (quoting Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 65-66 (2d Cir. 2012)).  The Court of Appeals recently clarified that a bank transacts business with New York through its "use of a correspondent bank account, even if no other contacts between the defendant and New York can be established, *if* the [bank's] use of that account was purposeful."  Id. (quoting Licci, 673 F.3d at 66) (emphasis in original).  It therefore found that a foreign bank that "did not operate branches or offices, or maintain employees, in the United States" and whose "sole point of contact with the United States was a correspondent account" transacted business with New York because  "complaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client . . . shows purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial laws of New York and the United States."  Id.  It further explained

that "[w]hile it may be that [the bank] could have routed the dollar transactions . . . elsewhere, the fact that [it] used a New York account 'dozens' of times indicates desirability and a lack of coincidence." Id.  Accordingly, it may be concluded that CS-G transacted business in New York as a result of its use of a correspondent account to effectuate multiple wire transfers.  See Compl. at ¶¶ 57-58.

Nevertheless, Plaintiffs have failed to allege that their claims "arise from" the wire transfers in New York because there is no "articulable nexus or substantial relationship" between the transfer of $460,000 dollars to a New York bank account in 1997 and Defendants' alleged role in the "concealment of [United Energy-Ukraine's] assets, to prevent their collection," Compl. at ¶ 93, in the context of an $18 million judgment entered nearly a decade later.  Section 302(a)(1) requires, "at a minimum, a relatedness between the transactions and the legal claim such that the latter is not completely unmoored from the former." Licci, 2012 WL 5844997. The Court of Appeals found that a bank's "repeated use" of a correspondent account to finance terrorist activities were sufficient to find that terrorism-related claims arose from the bank transactions at issue where the bank "did not route a transfer for a terrorist group once or twice by mistake," but "[r]ather . . . deliberately used a New York account again and again to effect its support of . . . allegedly shared terrorist goals." Id.  That rationale is not available here.  Since Plaintiffs have not alleged that CS-G shared the goal of concealing United Energy-Ukraine's assets, have offered no explanation as to how this goal would be furthered by moving a relatively paltry sum through an account in New York, or how doing so could have been intended to prevent collection of a judgment that had not yet occurred and could not have been foreseen at the time of the wire transfers, the claimed connection is too attenuated to find that the "arising from" requirement has been satisfied with regard to CS-G.

7

With regard to the Individual Defendants and CS-Trust, their employer, Plaintiffs only "presume" and "infer" that at least one of the three Individual Defendants chose to transfer the $460,000 to New York, but do not specify who made this decision.  See Pl.'s Mem. of Law at 10-11.  Moreover, the Complaint does not allege that any of the Individual Defendants were involved, but rather that "Olexandr Tymoshenko instructed, by two letters . . . to wire transfer $460,000 to Bassington's account in New York."  Compl. at ¶ 57.  Plaintiffs have therefore failed to allege that any of the Individual Defendants or that CS-Trust transacted any business with New York.

Accordingly, all claims against CS-G, CS-Trust, and the Individual Defendants are dismissed for want of personal jurisdiction.

### III.     Failure to State a Claim for Which Relief May Be Granted[3]

####     A.     Legal Standard

In considering a motion to dismiss, the Court "accept[s] as true all of the factual allegations contained in the complaint," and construes the complaint in the light most favorable to the plaintiff.  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007).  The Court only "assess[es] the legally feasibility of the complaint;" it does not "assay the weight of the evidence which might be offered in support thereof."  Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003).  To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor

---

[3] Though this analysis primarily applies to CS-AG, which did not move to dismiss the complaint for lack of personal jurisdiction, it also provides an alternative ground for dismissing the claims against CS-G, CS-Trust, and the Individual Defendants.  See Def.'s Mem.of Law at 8 n.9.

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Complaints sounding in fraud must meet a heightened pleading standard, such that the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "In general, allegations of fraud based on information and belief do not satisfy the requirements of Rule 9(b)" unless they regard "matters particularly within the knowledge of the opposing party," for which the allegations may be made on information and belief; but "must be accompanied by a statement of the facts on which the belief is founded." Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 116 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003).

### B.    Counts 1 and 4

Plaintiffs' first cause of action seeks recovery from Defendants of its July 7, 2005 default judgment against United Energy-Ukraine. Compl. at ¶ 1-2, 84, 93-95; see also United Energy Sys. Of Ukraine, PFG v. Univ. Trading & Investment Co., Inc., Registration of Foreign Judgment, No. 11-mc-249-P1 (S.D.N.Y. July 19, 2011), Dkt. No. 1. Universal Trading also has a default judgment against Bassington. See Universal Trading & Investment Co. v. Bassington, Ltd., Registration of Foreign Judgment, No. 12-mc-165-P1 (S.D.N.Y. May 15, 2012), Dkt. No. 1. Plaintiffs' fourth cause of action seeks to pierce Bassington's corporate veil and have "Bassington declared as [United Energy-Ukraine's] *alter ego*, for purpose of satisfying the judgment debt." Compl. at ¶ 111. Piercing the corporate veil is not "a cause of action independent of that against the corporation.'" Network Enters. Inc. v. Reality Racing, Inc., No. 09 Civ. 4664, 2010 WL 3529237, at *4 (S.D.N.Y. Aug. 24, 2010) (quoting Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993)). Plaintiffs' fourth cause of action is dismissed because, "to the extent Plaintiff[s] attempt[] to allege alter ego liability as an

*independent* cause of action, the claim fails without any need for further analysis." Id. (emphasis in original).

It is unnecessary for the Court to reach the issue of whether Plaintiffs can successfully pierce the corporate veil in order to hold CS-AG liable for the default judgments against Bassington or United Energy-Ukraine. Even assuming *arguendo* that CS-AG is their alter ego, Plaintiffs' claim against CS-AG would still fail. Pursuant to Fed. R. Civ. P. 69(a)(1), the process for executing a money judgment is governed here by N.Y.C.P.L.R. § 5225(b), under which "a judgment creditor pursuing property in the possession of someone other than the judgment debtor must commence an action against the *person in possession*." Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A., 190 F.3d 16, 21 (2d Cir. 1999) (emphasis added). Plaintiffs allege that $460,000 was transferred to Bassington's account with CS-G in 1997, Compl. at ¶¶ 13, 58, and now asserts that the assets "are held through Credit Suisse's entities," without specifying which entities or providing any factual allegations underlying this assertion. Pl.'s Opp'n at 22. This is plainly insufficient to show that CS-AG currently possesses the assets on behalf of Bassington or United Energy-Ukraine that Plaintiffs hope to recover. Plaintiffs have not alleged that CS-AG, as opposed to its corporate affiliates, ever held assets on behalf of Bassington, and its vague statement that it believes that the assets are now held by unspecified "Credit Suisse entities" does not meet the pleading standards set out by Iqbal and Fed. R. Civ. P. 9(b). Moreover, the only bank account identified by Plaintiffs that Bassington held with any Credit Suisse entity was closed in 1999. Neither CS-G nor CS-Trust *currently* hold funds or other property on behalf of Bassington or United Energy-Ukraine from which their debts to Universal Trading can be paid. Welch Decl. at ¶¶ 20-21; Le Poidevin Decl. at ¶¶ 15, 22. Accordingly, Plaintiffs first cause of action is dismissed because "[t]here is simply no property

or money still existing that belongs to [Bassington or United Energy-Ukraine] for [Plaintiffs] to attach." Baker v. Power Secs. Corp., 948 F. Supp. 255, 261 (W.D.N.Y. 1996).

      C.     *Counts 2, 3, 5, 6, 7, and 8*

Federal courts sitting in diversity apply the forum state's statutes of limitation. Hughes v. Equity Office Props. Trust, 245 Fed. Appx. 88, 89 (2d Cir. 2007) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 107-08 (1945)). Pursuant to N.Y. C.P.L.R. § 202, New York applies the shorter of the limitations period of either New York or the state of accrual, which, for purely economic injuries, "is usually where the plaintiff resides and sustains the economic impact of the loss." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 530-31 (1999).   Because Plaintiffs are Massachusetts corporations, Massachusetts law governs and the statute of limitations for Plaintiffs' conversion (count two), unjust enrichment (count three), constructive trust (count five), equitable lien (count six), fraudulent conveyance (count seven) and civil conspiracy (count eight) claims is three years.[4] Mass. Gen. Laws ch. 260, § 2A; see also Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.M.B.H. & Co. KG, 448 F. Supp. 2d 244, 263 n.16 (D. Mass. 2006). Defendants' last specified act occurred on July 7, 1998, when CS-G "blocked" or "froze" "assets related to" accounts held by United Energy-Ukraine, Bassington, the Tymoshenkos, and "a number of their co-conspirators," at which point CS-AG "froze all assets related to [United Energy-Ukraine]." Compl. at ¶¶ 68-69.   Bassington's account with CS-G was closed on April 19, 1999 and BL Trust's accounts with CS-G were closed on May 4, 1999, and May 8, 2001. Welch Decl. at ¶¶ 21, 23. Plaintiffs filed their complaint in the instant matter on January 11, 2012, over a decade later.

---

[4] Though Defendants assert that New York's statute of limitations should apply to Plaintiffs' conversion claim and that Massachusetts's statute of limitations should apply to all of Plaintiffs' other claims, it is not necessary to address this distinction because the applicable statute of limitations for the conversion claim is the same regardless of which statute is applied. Compare Mass. Gen. Laws ch. 260 § 2A and N.Y. C.P.L.R. § 214(3).

Plaintiffs raise three arguments regarding the statute of limitations. First, Plaintiffs argue its 2012 default judgment against Bassington "resets the statutes of limitations applicable to a judgment creditor." Pl.'s Opp'n at 23. Plaintiffs fail to cite any authority for this proposition, however, nor do they explain the supposed relationship between the default judgment against Bassington and the claims at issue here against CS-AG. Second, Plaintiffs assert that statutes of limitations defenses are properly raised only on summary judgment. This is not correct, they may also be raised where "it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations." Santos v. Dist. Council of N.Y.C. & Vicinity of United Bhd. Of Carpenters & Joiners of Am., 619 F.2d 963, 967 n.4 (2d Cir. 1980).

Finally, Plaintiffs assert that the statute of limitations argument is "moot" because of Defendants' ongoing concealment of the assets in question. Pl.'s Opp'n at 23. However, "it is a well-settled rule that causes of action in tort generally accrue under G.L. c. 260 § 2A at the time the plaintiff is injured," Joseph A. Fortin Construction, Inc. v. Massachusetts Housing Finance Agency, 392 Mass. 440, 442 (1984), and the fact that "[t]he plaintiff may have suffered ongoing injuries following the actions of which he complained . . . does not transform the alleged wrongdoing into a continuing tort." Kirley v. Kirley, 521 N.E.2d 1041, 1043 (Mass. App. Ct. 1988) (citations omitted). Because the last acts that Defendants allegedly committed occurred over a decade ago, the applicable statutes of limitations have long since run. Plaintiffs' second, third, fifth, sixth, seventh and eighth causes of action are therefore dismissed.

    D.    Count 9

Plaintiffs seeks a declaratory judgment regarding "whether Bassington has been a true corporation or rather its corporate veil should be pierced for purposes of collecting Universal Trading's judgment," whether Bassington should be held severally and jointly liable with United

Energy-Ukraine, and "whether BL Trust has been illegal and whether it should be declared void, for purposes of satisfying the present judgment order." Compl. at ¶ 130-31. "The law is clear that declaratory relief . . . is not a separate cause of action but instead 'merely offers an additional remedy to litigants.'" *Kirkendall v. Halliburton, Inc.*, No. 07 Civ. 289, 2011 WL 2360058, at *11 (W.D.N.Y. June 9, 2011) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 21 (2d Cir. 1997)). Plaintiffs' ninth cause of action is therefore dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and the complaint is therefore dismissed. The Clerk of Court is directed to enter judgment and to terminate this case.

Dated: New York, New York
   December 12, 2012

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

13