UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

UNIVERSAL TRADING & INVESTMENT CO.,  :
INC.; and FOUNDATION HONESTY          :
INTERNATIONAL, INC.                   :
                                      :
            Plaintiffs,               :
                                      :
        -against-                     :
                                      :
CREDIT SUISSE (GUERNSEY) LTD.; CREDIT :        12 Civ. 0198 (PAC)
SUISSE AG; CREDIT SUISSE TRUST, LTD;  :
PHILIP GLANFIELD; PAMELA LE           :
CHEMINANT; JULIA CHURCH; and DOES 1   :
through 10                            :
                                      :        **OPINION & ORDER**
            Defendants                :
------------------------------------------------------------ x

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __April 5, 2013 |

HONORABLE PAUL A. CROTTY, United States District Judge:

On December 12, 2012, this Court dismissed Universal Trading and Investment Co., Inc.

("Universal Trading") and Foundation Honesty International, Inc.'s complaint seeking to recover

money awarded to Universal Trading in an earlier case in which Universal Trading obtained a

default judgment against United Energy Systems of Ukraine, PFG ("United Energy-Ukraine").

Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., No. 12 Civ. 198, 2012 WL

6186598 (S.D.N.Y. Dec. 12, 2012) (the "Order").  Specifically, the Court found that it lacked

personal jurisdiction over defendants Credit Suisse (Guernsey) Ltd. ("CS-G"), Credit Suisse

Trust Ltd. ("CS-Trust"), Philip Glanfield, Pamela Le Cheminant, and Julia Church; and that

Plaintiffs had failed to state a claim against Credit Suisse AG ("CS-AG") for which relief may be

granted.  On January 10, 2013, Plaintiffs moved to alter or amend the Order, pursuant to Fed. R.

Civ. P. 59(e) ("Rule 59(e)"), by granting leave to amend their complaint.  For the following

reasons, Plaintiffs have failed to satisfy Rule 59(e)'s "strict" standard, Shrader v. CSX Transp.,

1

<u>Inc.</u>, 70 F.3d 255, 256 (2d Cir. 1995), and their motion is denied.

DISCUSSION

## I.     **Legal Standard**

 "A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)."  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008).  Reconsideration of a court's previous order pursuant to Rule 59(e) "is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  <u>Parrish v. Sollecito</u>, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting <u>In re Health Mgmt. Sys. Inc. Sec. Litig.</u>, 113F. Supp. 613, 614 (S.D.N.Y. 2000)).  Such motions are "not intended to allow a party to 'relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment,'" <u>Muze, Inc. v. Digital On-Demand, Inc.</u>, No. 00 Civ. 8195, 2003 WL 21359705, at *2 (S.D.N.Y. June 12, 2003) (quoting <u>Supreme oil Co. v. MTA</u>, No. 96 Civ. 5169, 1997 WL 715735, at *1 (S.D.N.Y. Nov. 12, 1997)), and  "will generally be denied" unless the movant can point to "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  <u>In re Barclays Bank PLC Sec. Litig.</u>, No. 09 Civ. 1989, 2011 WL 2150477, at *1 (S.D.N.Y. May 31, 2011) (quoting <u>Hinds Cnty. v. Wachovia Bank N.A.</u>, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010).

Where the motion is based on new evidence, the movant "must demonstrate that '(1) newly discovered evidence is of facts existing at the time of the prior decision; (2) the moving party [was] excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative of evidence

2

already offered.'"   Fidelity Partners, Inc. v. First Trust Co. of N.Y., 58 F. Supp. 2d 55, 59

(S.D.N.Y. 1999) (quoting Tufts v. Corp. of Lloyd's, 981 F. Supp. 808, 812 (S.D.N.Y. 1996)).

## II.    **The Balford Trust**

Plaintiffs claim to have recently learned that "Defendants still control at least

$143,813,862 at the Balford Trust, containing mostly [United Energy-Ukraine's] proceeds . . .

which are still held by CS-G and CS-Trust."  (Pl.'s Br. at 5.)  Information regarding the Balford

Trust does not constitute "new evidence," however, because Plaintiffs have been aware of its

existence for several years.  In 2005, for example, Universal Trading unsuccessfully sought to

intervene in a forfeiture action related to the Balford Trust's assets.  See U.S. v. All Assets Held

at Bank Julius Baer & Co., Ltd., No. 04 Civ. 798, Dkt. No. 39 (D.D.C. Oct. 11, 2005) (Universal

Trading's Verified Statement of Interest); see also Dkt. No. 228 (March 25, 2011) (granting

judgment on the pleadings against Universal Trading).    Similarly, in 2008, Universal Trading

initiated an action related to the Balford Trust, the dismissal of which was recently affirmed by

the Ninth Circuit.  Universal Trading & Inv. Co. v. Dugsberry Inc., No. 08 Civ. 3632, Dkt. No.

146 (N.D. Cal. Nov. 28, 2012).  Plaintiffs have offered no explanation as to how they might have

been "excusably ignorant" of the Balford Trust after engaging in litigation related to the trust in

at least two other federal courts prior to initiating the instant litigation.  Fidelity Partners, 58 F.

Supp. 2d at 59.

## III.    **The Bassington Default Judgment**

Plaintiffs' contend that it was "impossible" for them to have pled facts regarding their

default judgment against Bassington because it was obtained three months after the filing of the

Complaint, and that the default judgment entitles them to shares of Bassington stock held by

Defendants.  (Pl.'s Br. at 11.)  The Court was aware of the default judgment at the time of the

Order, however, and noted it in the Order itself.  See Universal Trading, 2012 WL 6186598, at

*5.  Similarly, the record disclosed that CS-Trust held shares in Bassington.[1]  (See Le Poidevin

Supp. Decl. ¶ 4, July 19, 2012, Dkt. No. 36.)  Neither of these facts constitute "new evidence"

for purposes of Rule 59(e).  See Fidelity Partners, 58 F. Supp. 2d at 59.

## IV.  Jurisdiction over CS-Trust

Plaintiffs assert that their post-Order investigation has revealed new information

demonstrating that CS-Trust is subject to general jurisdiction in New York.  Specifically, they

assert that CS-Trust created a trust for the benefit of two New York residents, and that "the

successors in rights for that trust, . . . held by CS Trust, are also in New York."  (Pl.'s Br. at 13-

14.)  These facts are derived from Weizmann Inst. of Sci. v. Neschis, 421 F. Supp. 2d 654

(S.D.N.Y. 2005) (cited in Pl.'s Br. at 13-14), however, a matter of public record since long

before the instant litigation was initiated.  Accordingly, these are not facts that Plaintiffs were

"excusably ignorant of . . . despite using due diligence to learn about them," and do not

constitute new evidence for purposes of Rule 59(e).  Fidelity Partners, 58 F. Supp. 2d at 59.

Plaintiffs make a similar argument regarding the Balford Trust, which, as discussed supra,

suffers from the same flaw.

---

[1] Universal Trading's reliance on Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533 (2009), for the proposition that
it is "entitled to that stock" is misplaced.  (Pl.'s Br. at 12.)  In Koehler, the Court of Appeals found that a bank which
held stock certificates on behalf of a judgment debtor was required to deliver them to a judgment creditor under
N.Y. C.P.L.R. article 52.  Specifically, the stock at issue was that of a "Bermuda corporation of which [the judgment
debtor] and Koehler [the creditor] had been shareholders, and certificates representing [the debtor's] shares were in
the possession of the Bank."  Koehler, 12 N.Y.3d at 536.  By contrast, CS-Trust held shares in Bassington, the
judgment debtor, on behalf of the BL Trust, against whom Plaintiffs have not obtained any judgment.  (Le Poidevin
Supp. Decl. ¶ 4.)  Accordingly, these facts do not disturb the Court's finding that "[n]either CS-G nor CS-Trust
currently hold funds or other property on behalf of Bassington . . . from which [its] debts to Universal Trading can
be paid."  Universal Trading., 2012 WL 6186598, at *5 (emphasis added).

## V.     CS-G's Nostro Accounts and Securities Trading

Plaintiffs argue that the Court has jurisdiction over CS-G due to its nostro accounts[2] with Bank of New York Mellon and Brown Brothers Harriman & Co. in New York, as well as alleged New York-based securities transactions.  The nostro accounts were disclosed prior to the Order, and thus do not constitute "new evidence."  (See Welch Decl. ¶ 13, May 11, 2012, Dkt. No. 15; see also Pl.'s Opp'n to Mot. to Dismiss at 8, 2012, Dkt. No. 26 (discussing the nostro accounts).) Moreover, Plaintiffs have not cited any legal authority or presented any argument for why the existence of such accounts would be sufficient to find that the Court has jurisdiction over CS-G, nor has the Court's research revealed any such precedent.  Cf. J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001) ("It is recognized that the existence of a bank account in New York is generally not sufficient to confer personal jurisdiction over a foreign defendant.").  With respect to CS-G's alleged securities transactions, Plaintiffs rely purely on speculation, rather than factual assertions or evidence that was previously unavailable, to assert that these transactions took place and had were connected to New York.  (See, e.g., Pl.'s Br. at 17 ("With a high probability, such bonds' tranches with round dollar numbers would have been typically transacted with in New York. . . . It is highly plausible that CS-G actually transacted in bonds through [Brown Brothers Harriman]").  Neither argument provides a valid ground for reconsideration.  See In re Barclays Bank PLC Sec. Litig., 2011 WL 2150477, at *1.

## VI.    CS-G and CS-Trust as "Departments" of CS-AG

Plaintiffs contend that "CS-G and CS-Trust are merely departments of the parent bank," such that CS-AG "is in full control of its subsidiaries, without corporate separateness."  (Pl.'s Br.

---

[2] "A 'nostro' account is the foreign currency account which a bank effecting a transfer of funds establishes with a correspondent bank.  Thus, a U.S. bank (Bank A) transferring funds to a French bank (Bank B) may instruct the French banking institution to debit Bank A's French franc 'nostro' account.  Conversely, a 'vostro' account refers to the U.S. dollar account held with Bank A by Bank B."  U.S. v. BCCI Holdings Luxembourg, S.A., 997 F. Supp. 449, 452 n.3 (D.D.C. 1997).

at 18-19.)  In doing so, Plaintiffs rely on evidence that they previously sought to present to the Court via requests for judicial notice, a declaration that Plaintiffs submitted to the Court in connection with their opposition to Defendants' motion to dismiss (see Plyamovaty Decl., June 15, 2012, Dkt. No. 26), and public filings submitted to the Securities and Exchange Commission. None of these sources constitute new evidence that was previously unavailable to Plaintiffs.  See Fidelity Partners, 58 F. Supp. 2d at 59.  Accordingly, they do not warrant reconsideration.

## VII.    Change in Controlling Law

Plaintiffs cite Licci v. Lebanese Canadian Bank, SAL, No. 183, 2012 WL 5844997 (N.Y. Nov. 20, 2012) as "new case law concerning correspondent accounts[3] [that] warrants [an] opportunity to replead."  (Pl.'s Br. at 21.)  Licci was decided on November 20, 2012, however, several weeks before the Order, which itself included a discussion of Licci.  See Universal Trading & Inv. Co., 2012 WL 6186598, at *3-4.  "Accordingly, there has been no change in controlling law since the Order was issued."  Analytical Surveys, Inc. v. Tonga Partners, No. 06 Civ. 2692, 2009 WL 1514310, at *3 (S.D.N.Y. May 29, 2009), aff'd, 684 F.3d 36, 52 (2d Cir. 2012) ("though . . . we issued our decision in Perseus after the completion of briefing . . . , Perseus came down . . . before the district court granted summary judgment").

## VIII.    Merger of Assets

Finally, Plaintiffs allege that CS-AG still holds $460,000 that belonged to Bassington and to which Plaintiffs are entitled, because closing Bassington's account in 1998 "actually operated to merge [the funds] into the . . . parent account of CS-AG in New York."  (Pl.'s Br. at 22.)  The

---

[3] Plaintiffs also appear to argue that they previously "disproved by documents" that the account at issue was a correspondent account, rather than a checking account.  (Pl.'s Br. at 21.)  The Complaint, however, refers to the account in question as "correspondent account."  (See Compl. ¶¶ 57-61; see also Welch Decl. ¶¶ 7-8 (confirming account in question was a correspondent account).)  Even assuming, arguendo, that the account was not a correspondent account, this would negate, not bolster, Plaintiffs' argument that Licci constituted an intervening change in controlling law by rendering Licci entirely irrelevant.  See Licci, 2012 WL 5844997, at *3 (addressing whether "a foreign bank's maintenance of a correspondent bank account at a financial institution in New York, and use of that account" is sufficient to confer personal jurisdiction over the foreign bank).

basis for this assertion is Plaintiffs' post-Order "inquiries with the U.S. Federal Reserve" (id.) and speculation that this is "the reasonable explanation" for Defendants' failure to submit records disproving Plaintiffs' theory. (Id. at 23 n.17.) Assuming, *arguendo*, that this is true, it would not warrant granting Plaintiffs' motion for reconsideration because they have not offered any reason for waiting until after the Order was issued to make such inquiries regarding events that transpired fifteen years ago. See Fidelity Partners, 58 F. Supp. 2d at 59.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion is DENIED. The Clerk of Court is directed to terminate the motion at docket number 48.

Dated: New York, New York
    April 5, 2013

                            SO ORDERED

                            PAUL A. CROTTY
                            United States District Judge